UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SOJOURNER HARDEMAN,

    Plaintiff,

-v-

THE CITY OF NEW YORK, et al.,

    Defendants.

11-CV-3424 (RJH) (JCF)

Affidavit of
Sojourner Hardeman

---

State of New York   )
         ss:
County of New York )

  I, Sojourner Hardeman, having been duly sworn, hereby deposes and says:

1. I am a 42 year old homeless woman. I lost my job as a legal assistant in September of 2010.

2. Due to the notoriously unsafe conditions of the shelter system, I have chosen to forego staying in a shelter and instead sleep outside of St. Catherine of Siena Church on 68th Street between First Avenue and York Avenue. Another church, the Jan Hus Presbyterian Church and Neighborhood House at 351 East 74th Street, New York, NY, accepts mail for me as I apply to jobs.

3. I spend most days sitting in front of 711 Fifth Avenue, New York, NY in an indent between the windows of two vacant stores, with a sign asking for work and advertising my computer and typing skills.

4. I measured the indent, and it extends 1" foot 8' inward from the outer wall. When I sit in the indent with my sign, the outer edge of the sign is 10 inches out from the outer wall. Measured from the outer wall to the curb, the sidewalk is 16" 1' wide. When I sit in the indent with a sign, I occupy 5.2% of the width of the sidewalk.

5. Attached as Exhibits A, B, C and D are true and correct photographs of myself sitting in the indent, a sign that I'm holding, a measurement showing how far the edge of my sign extends from the back of the indent, and a measurement of the depth of the indent, respectively.

6. On May 19, 2011 I filed a lawsuit against the NYPD concerning my unlawful arrest on March 24, 2011, in which I was arrested for disorderly conduct while sitting at 712 5th Avenue.

6.    On May 19, 2011 I filed a lawsuit against the NYPD concerning my unlawful arrest on March 24, 2011, in which I was arrested for disorderly conduct while sitting at 712 5th Avenue.

### May 21, 2011 Call From Sergeant Burns

7.    On Saturday May 21, 2011 at approximately 4:00 pm., I received a call from a man who identified himself as Sergeant Burns. He stated that he was calling about the complaint, and I directed him to talk to my lawyer and gave him my lawyer's number. He asked once more if I wanted to discuss the complaint with him, and I asked him to call my lawyer.

### July 13, 2011 Harassment

8.    On July 13, 2011 at approximately 10:40 a.m., while I was sitting in the indent with my sign, New York City Police Department ("NYPD") Officer Nicholich (shield #14585) and his partner pulled up in a police cruiser and told me I had to move.

9.    The officers exited the car and asked if I was homeless and if I wanted an ambulance or to be taken to a shelter. I was told I was not being arrested or being given a summons, but that I had to leave.

10.    I told the officers it was my understanding that I was there legally, which they disputed, attesting that I was blocking the sidewalk, that they had observed people walking around me and that I had committed disorderly conduct.

11.    Due to my position in the indent between the vacant stores' windows I was not blocking traffic or in the way of pedestrians.

12.    I called my attorney and spoke to him for a minute and 45 seconds before noticing that the officers had departed.

### July 15, 2011 Harassment and Summons

13.    On July 15, 2011 at approximately 11:45 a.m., while sitting in the same indent with my sign, I was approached by NYPD Officer Castelli (shield #25730), who told me I could not be there and had to move along.

14.    I asked the officer if I was under arrest and was told that I was not, but was again told that I could not remain there. He stated his job was to ask me to leave, that he had done so, but that he had other jobs to do and left.

15.    At approximately 11:50 a.m., Officer Castelli returned with Officer Fabb (shield #31980), who told me I had to leave, remarking, in sum and substance,

"You can't be here. This is Fifth Avenue." When I stated my lawyer has told me it is legal for me to be here, he responded, in sum and substance "Your lawyer is mistaken."

16. Officer Fabb asked to see my ID, but stated that even if I showed him my ID, I would still have to leave or the situation would escalate. The officer did not indicate what escalation would entail.

17. I told the officers I would not leave and gave them my ID, which they brought back to their car.

18. The officers returned my ID and gave me a summons, which said I was in violation of 240.20 sub. 5, disorderly conduct, a true and correct copy of which is attached hereto as Exhibit E.

19. The officers departed at 12:15 p.m., stating that if I did not leave, the situation would escalate.

### July 19, 2011 Harassment

20. On July 19, 2011 at approximately 8:30 a.m., while sitting in the same indent with my sign, I was approached by NYPD Police Officer Vega (shield #8642). Officer Vega asked me to leave and then departed.

21. Office Vega then returned with NYPD Police Officer Martinez (shield #2723), who told me I had to move along. I stated it was my understanding that it was legal for me to be there, asked if I was under arrest, and was told I was not.

22. Officer Martinez asked for my ID, which I gave him, and read my sign, which reads "Sleeping outside and looking for work. Type 70 wpm, have Mac, Word and Excel certifications. All assistance greatly appreciated. Need computer help? My rates are affordable. My expenses are low."

23. In response to my sign, Officer Martinez asked if I was making money and gave me an accusatory look. He then asked why I was giving him a hard time. I asked Officer Martinez who had told him it was illegal for me to sit there. Officer Martinez said he was giving me 20 minutes and left.

24. Shortly after that I was approached by an officer in a uniform of white shirt and black pants. The officer was a middle-aged Caucasian male of average height, with short, white hair and square features. The officer told me I could not be there.

25. When I asked if I was under arrest, he said that I could be. When I asked for what charge, he said obstructing the sidewalk. I noted I was not blocking the sidewalk, and he said, in sum and substance, "That's my call."

26. The officer asked if I was leaving and I apologized but told him I was not. I asked if I was under arrest and he told me I would be the first to know. The officer left at approximately 8:55 a.m.

27. At approximately 9:40 a.m. a pair of officers pulled up in front of where I was sitting in a light blue car. Both officers were Caucasian males wearing badges on keychain holders around their necks. They showed their badges but refused to give their names. One of the officers told me I could not be there.

28. The officer told me he was giving me a five-minute warning at approximately 9:50 a.m., and then returned to the car with his partner. They remained there before driving off at 10:13 a.m.

### July 24, 2011 Harassment, Arrest, and Summons

29. On July 24, 2011 at approximately 8:45a.m., Officers Lagoa (shield #21670) and Otero (shield # 3337) pulled up in a squad car near the indent where I was sitting with my sign.

30. After some time, Officer Lagoa got out of the car to come talk to me, and Officer Otero joined him shortly thereafter.

31. The officers told me I couldn't be sitting there and I could go across the street and panhandle in front of the church.

32. I told the officers it was my understanding I can sit here legally and panhandle. The officers told me that was untrue, and that panhandling was illegal and I could be arrested for it. I asked if I was under arrest, and the officers said no, but that I had to leave because it was illegal.

33. The officers then asked if I wanted an ambulance. I said I wasn't ill, and they said I seemed to be out of it because I didn't "get it," that I couldn't be out here blocking the sidewalk. I repeated several times that I understood I was legally able to be out here on the sidewalk and panhandling. The officers said that by refusing to obey their orders to leave I was disobeying a police officer and that was a crime.

34. Officer Otero then told Officer Lagoa that she was going to call Sergeant Burns, and apparently decided not to.

35. The officers arrested me at about 9:13 a.m., telling me the charge was disorderly conduct. I was handcuffed and placed in the car. At that point, they asked for my name and ID and I said I'd be happy to answer any of their questions in the presence of my lawyer.

36. Shortly after that I saw the officers speaking with some Business Improvement District security guards.

37. At about 9:21 a.m. Officer Otero asked me if I was on medication, and I said no. She said "yes, you are, what do you take?" She asked me if I was on medication several more times and each time I told her I was not. She told me they were going to call a bus for me. She explained a bus was an ambulance and they were going to help me. I mentioned again that I wasn't sick.

38. The officers then told me I wasn't under arrest. They took my ID and checked it. Officer Lagoa informed me that a lot of the building owners own the sidewalks and anybody could be arrested for trespassing.

39. Officer Otero then gave me a summons, which said that I was in violation of "240-20 Subsection 5, Penal Law, Discon/Obstruction Pedestrian Traffic," a true and correct copy of which is attached hereto as Exhibit F.

40. I am asking for an injunction because I am afraid that without it I will continue to be harassed, summonsed, and arrested.

41. I therefore respectfully request an injunction to protect me from future harassment by the NYPD for sitting on the sidewalk and asking for work.

I swear under penalties of perjury that the foregoing is true and correct.

_____
Sojourner Hardeman

Subscribed and Sworn to Before Me
on this 29 day of July, 2011

_____
Mark Taylor
Notary Public - No. 02-TA6202256
Qualified in Kings County, NY
expires March 23, 2013