UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOJOURNER HARDEMAN,

               Plaintiff,

   -v-

THE CITY OF NEW YORK, et al.,

              Defendants.

11-CV-3424 (RJH) (JCF)

**Memorandum of Law in Support of Plaintiff's Motion
for a Preliminary Injunction**

David B. Rankin
Law Office of Rankin & Taylor
350 Broadway, Suite 700
New York, New York, 10013
t: 212-226-4507

*Counsel for Plaintiff*

## Table of Contents

I.  Introduction...................................................................................1

II.  Statement of Facts........................................................................2

III.  Plaintiff has Standing to Obtain an Injunction.......................................3

IV.  A Preliminary Injunction Should Issue...............................................5

    a.  Plaintiff is Likely to Succeed on the Merits...............................6

        1.  Defendants' Arrest and Charging of Ms. Hardeman Without Probable Cause Violates the Fourth Amendment...............6

        2.  Plaintiff Was Retaliated Against for Engaging in Protected Speech in Violation of the First Amendment...................11

        3.  Defendants' Repeated Issuances of Summonses In Order to Coerce Plaintiff Into Abandoning the Indent and Cease Panhandling on Fifth Avenue Co nstitute Abuse of Process in Violation of the Fourteenth Amendment.......................15

    b.  Plaintiff is Will Suffer Irreparable Harm in the Absence of Preliminary Relief...............................................................18

    c.  The Balance of Hardships Tips Sharply to Plaintiff....................19

    d.  The Serious Question Standard has been Met...........................19

V.  The Requirement of a Bond Should be Waived ................................20

VI.  Conclusion.................................................................................20

<u>**TABLE OF AUTHORITIES**</u>

<u>**STATUTES**</u>

42 U.S.C. § 1983                                    2, 3, 9, 15

N.Y.P.L. § 240.20(5)                            3, 8, 9, 10, 11, 19

N.Y.P.L. § 240.35                                  19

<u>**CASES**</u>

*Allee v. Medrano*, 416 U.S. 802 (1974)                4

*Amore v. Novarro*, 624 F.3d 522 (2d Cir. 2010)         16

*Bery v. City of New York*, 97 F. 3d 689 (2d Cir. 1996)       19

*Blake v. Race*, 487 F.Supp.2d 187 (E.D.N.Y. 2007)        18

*Board of Ed. of Farmingdale UFSD v. Farmingdale Classroom Teacher Ass'tn Inc., Local,* 38 N.Y.2d 397 (1975)                17

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978)          12

*Bradley v. City of New York*, 08-CV-1106, 2007 WL 232945 (S.D.N.Y. 2007)

                                                                12

*Brawer v. Carter*, 937 F.Supp. 1071 (S.D.N.Y. 1996)       16, 18

*Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738 (2d Cir. 2000)
                                                                18

*Brooklyn Institute of Arts and Sciences v. City of New York*, 64 F.Supp.2d 184 (E.D.N.Y.1999)                          13

*Burg v. Gosselin*, 591 F. 3d 95 (2d Cir. 2010)            7

*Cameron v. Johnson*, 390 U.S. 611 (1968)             4

*Casale v. Kelly*, 710 F. Supp. 2d 347 (S.D.N.Y. 2010)       19

*Catone v. Spielmann*, 149 F.3d 156 (2d Cir. 1998)        16

*Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81 (2d Cir. 1996)
                                                                13

*Citigroup Global Markets, Inc. v. VCG Special Opport. Master*, 598 F. 3d 30 (2d Cir. 2010)                               19

*City of Canton v. Harris*, 489 U.S. 378 (1989)          9, 10

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995)          15

*Connick v. Thompson*, 131 S.Ct. 1350 (2011)          10

*Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994)           15, 16, 17

*Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992)  18

*Curiano v. Suozzi*, 63 N.Y.2d 113 (1984)  16

*Davis v. Rodriguez*, 364 F.3d 424 (2d Cir. 2004)  7

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010)  6, 7

*Doctor's Associates, Inc. v. Stuart*, 85 F. 3d 975 (2d Cir. 1996)  20

*Elrod v. Burns*, 427 U.S. 347 (1976)  13

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009)  6

*Fitzgerald v. Barnstable School Comm.*, 129 S.Ct. 788 (2009)  9

*F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 F.2d 814 (2d Cir.1979)  19

*Gannett Co., Inc. v. DePasquale*, 443 U.S. 368 (1979)  6

*Genia v. Parker*, 2007 WL 869594 (E.D.N.Y. 2007)  12

*Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004)  11, 12, 13

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir.1991)  9

*Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545 (2d Cir. 2001)  14

*Granito v. Tiska*, 181 F.Supp.2d 106 (N.D.N.Y. 2001)  18

*Gray v. Sanders*, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963)  5

*Griffin-Nolan v. Providence Wash. Ins. Co.*, 04-CV-1453, 2005 WL 1460424, (N.D.N.Y. 2005)  7, 12

*G&V Lounge v. Michigan Liquor Control Commission,* 23 F.3d 1071 (6th Cir. 1994)  6

*Harper v. City of New York*, 09-CV-05571 WL 4788016 (E.D.N.Y. 2010)  7

*Hartman v. Moore*, 547 U.S. 250 (2006)  12

*Hernandez v. Wells*, 01-CV-4376, 2003 WL 22771982 (S.D.N.Y. 2003)  16, 18

*Holava-Brown v. Gen. Elec. Co.*, 189 F.3d 461, (2d Cir. 1999)  13

*Holley v. County Of Orange, NY*, 625 F.Supp.2d 131 (S.D.N.Y. 2009)  12

*Hous. Works, Inc. v. City of N.Y.*, 72 F. Supp.2d 402 (S.D.N.Y. 1999)  13

*Illinois v. Gates*, 462 U.S. 213 (1983)  7

*Jackler v. Byrne*, 10-CV-859, 2011 WL 2937279 (2d Cir. July 22, 2011)
                                                                    10

*Johnson v. City of New York*, 06-CV-9426, 2011 WL 666161(S.D.N.Y. 2011)
                                                                    9

*Jolly v. Coughlin,* 76 F. 3d 468 (2d Cir. 1996)                    6

*Loper v. New York City Police Dept.*, 999 F.2d 699 (2d Cir. 1993)
                                                                    12

*Los Angeles Co. v. Humphries*, 131 S.Ct. 447 (2010)               9

*Los Angeles v. Lyons*, 461 U.S. 95 (1983).                        3, 4

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010)      7

*Mangino v. Incorporated Village of Patchogue*, 739 F.Supp.2d 205 (E.D.N.Y. 2010)                                                         7, 16

*Metropolitan Council, Inc. v. Safir*, 99 F. Supp. 2d 438 (S.D.N.Y. 2000)
                                                                    19

*Mitchell v. Cuomo*, 748 F.2d 804 (2d Cir. 1984)                    18

*Monell v. Dep't of Soc. Svs.*, 436 U.S. 658 (1978)                9, 11

*New York City Triathlon v. NYC Triathlon Club*, 704 F. Supp. 2d 305 (S.D.N.Y 2010)                                                          6

*New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989)
                                                                    6

*New York Times Co. v. United States*, 403 U.S. 713 (1971)          18

*N.Y. State Law Officers Union v. Andreucci*, 433 F.3d 320 (2d Cir. 2006)
                                                                    12

*O'Shea v. Littleton*, 414 U.S. 488 (1974)                          4

*Panetta v. Crowley*, 460 F.3d 388 (2d Cir. 2006)                   8

*Parker v. Municipal Judge*, 83 Nev. 214, 427 P.2d 642 (1967)       20

*Parkin v. Cornell Univ.*, 28 N.Y.2d 523 (1991)                     17

*People v. Cantor*, 36 N.Y.2d 106, 111, 324 N.E.2d 872 (1975)       7

*People v. Carcel*, 3 N.Y.2d 327 (1957)                             8, 10

*People v. Jones*, 9 N.Y.3d 259 (2007)                              8, 10

*People v. Nixon*, 248 N.Y. 182(1928)                               8, 10

*People v. Reed*, 2008 N.Y. Slip Op 28036 (Crim. Ct., Kings Co. 2008)
                                                                    8

*People v. Schrader*, 162 Misc. 2d 789 (Crim. Ct., N.Y. Co. 1994)   12

*Phelps v. City of New York,* 04-CV-9570, 2006 WL 1749528 (S.D.N.Y. 2006)
                                                                            17

*Pottinger v. Miami*, 810 F.Supp. 1551(S.D.Fla. 1992)                       11

*Rodriguez v. Clinton*, 05-CV-322, 2009 WL 261203 (N.D.N.Y. 2009)
                                                                            13

*Rizzo v. Goode*, 423 U.S. 362 (1976)                                       4

*Sammartano v. First Judicial District Ct.*, 303 F.3d 959 (9th Cir. 2002)
                                                                            6

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003)                    7

*Stauber v. City of New York,* No. 03-9162, 2004 W.L. 1593870 (S.D.N.Y. 2004)
                                                                            5, 18

*TADCO Constr. Corp. v. Dormitory Auth. of N.Y.*, 700 F.Supp.2d 253 (E.D.N.Y. 2010)
                                                                            16

*Terry v. Ohio*, 392 U.S. 1 (1968)                                          7

*Van Zandt v. Fish & Wildlife Svce.*, 524 F.Supp. 2d 239 (W.D.N.Y. 2007)
                                                                            18

*Vasquez v. Pampena*, 08-CV-4184, 2009 WL 1373591 (E.D.N.Y. 2009)
                                                                            7

*Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620 (1980)
                                                                            17

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996)                               6, 7

*Winter v. Natural Resources Defense Counsel, Inc.*, 129 S.Ct. 365 (2008)
                                                                            5

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009)                6

*Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007)                         7

## OTHER AUTHORITIES

Stacy Lee Burns, *The Future of Problem-Solving Courts: Inside the Courts and Beyond*, 10 U. Md. L.J. Race, Religion, Gender & Class 73, 83-84 (Spring 2010)
                                                                            11

# I. Introduction

Plaintiff Sojourner Hardeman is a 42 year-old homeless woman who has been, ***and continues to be***, repeatedly arrested, threatened with arrest, given unlawful orders, and given criminal court summonses by the defendant NYPD officers in response to her lawful panhandling activity on Fifth Avenue.

Ms. Hardeman therefore brings this application by order to show cause for a temporary restraining order and preliminary injunction to stop this continued and persistent course of unconstitutional behavior by the defendants.

# II. Statement of Facts

Ms. Hardeman became homeless after loosing her job in September of 2010. Rankin Declaration, Ex. 1 ("Hardeman Aff.") ¶ 1. She currently sleeps outside a church on the Upper East Side of Manhattan. *Id*. ¶¶ 2–3.

On most days, Ms. Hardeman sits in an indent in front of 711 Fifth Avenue, holding a cardboard sign which communicates that she is looking for employment. Specifically, the sign reads:

> *Sleeping outside and looking for work.*
> *Type 70 wpm, have Apple, Word and Excel certifications.*
> *All assistance greatly appreciated.*
> *Need computer help? My rates are affordable.*
> *My expenses are low.*

The indent itself extends inward from the outer wall of 711 Fifth Avenue approximately twenty inches, so that when she sits in the intent, the far edge of her sign extends ten inches into the sidewalk. *Id*. ¶ 4. As the sidewalk is 16 feet, 1 inch wide, Ms. Hardeman only takes up approximately 5.2% of the total width of the sidewalk. *Id*. ¶¶ 3–5; *see also* photographs of Ms. Hardeman and the indent attached as Exhibits A through D to the Hardeman Affidavit.

On March 24, 2011, Ms. Hardeman was sitting in the indent with an empty cup and her sign. In the early evening hours, Officer Doyle and Officer Doe 1 approached Ms. Hardeman and asked her if she wanted any

shelter. After telling the officers she did not want shelter, the officers asked for her identification. Ms. Hardeman did not, at that time, have a valid picture identification with her. After telling the officers this, the officers told Ms. Hardeman she was under arrest for allegedly blocking pedestrian traffic. She was then handcuffed and taken to the NYPD's Midtown North Precinct. After being detained for several hours, Ms. Hardeman was released from the precinct, without charges or explanation for her arrest. Hardeman Aff. ¶ 6; see also First Amended Complaint ("FAC") ¶¶ 34-60.

On May 19, 2011, Ms. Hardeman filed this lawsuit, seeking compensation through 42 U.S.C. § 1983 for violations of her rights under the Fourth and Fourteenth Amendments to the Constitution. *Id*. ¶ 6.

On May 21, 2011, just two days after filing this lawsuit, Ms. Hardeman received a phone call from a man who identified himself as "Sergeant Burns" and who stated he wanted to talk to Ms. Hardeman about her complaint. Ms. Hardeman gave Sgt. Burns the name and phone number of her attorney and further instructed Sgt. Burns to call her attorney if he wished to discuss the matter. Sgt. Burns tried again to discuss the matter with Ms. Hardeman, and she again directed Sgt. Burns to call her attorney. *Id*. ¶ 7.

On July 13, 2011, while Ms. Hardeman was sitting in the indent with her sign, Officer Nicholich and Officer Doe 2 approached her and ordered her to move. They further asked Ms. Hardeman if she wanted shelter. Ms. Hardeman asked if she was under arrest. The officers told her she was not yet under arrest but she had to leave the area. Ms. Hardeman explained to the officers that it was not illegal for her to be sitting in the indent; the officers disagreed and again gave her an order to move from the indent. Ms. Hardeman responded by calling her attorney for advice. At some point during Ms. Hardeman's phone call, she noticed that the officers had left the area. *Id*. ¶¶ 8–12.

On July 15, 2011, just two days after being repeatedly threatened with arrest by defendant Officer Nicholich and Officer Doe 2, Officer Castelli approached Ms. Hardeman's position in the indent and told her to leave. Ms. Hardeman asked if she was under arrest. Officer Castelli told Ms. Hardeman she was not under arrest and again ordered her to leave.

The officer then left the area but shortly returned with another officer. The officers stated, in sum and substance, "You can't be here, this is Fifth Avenue." Officer Fabb again threatened to arrest Ms. Hardeman. When Ms. Hardeman stated she would not leave because her attorney told her it was legal to be in the indent, Officer Fabb took plaintiff's identification and issued her a criminal court summons for allegedly violating New York Penal Law ("NYPL") § 240.20(5), disorderly conduct by blocking pedestrian traffic. *Id.* ¶¶ 13–19.

On July 19, 2011, just over a week after receiving a criminal court summons, officers returned to the indent to harass and threaten Ms. Hardeman. Just as in the other incidences of harassment, the defendant-officers began their interaction with Ms. Hardeman by threatening her with arrest if she did not abandon her panhandling activity and move from the indent. When Ms. Hardeman asked the officer if she was actually under arrest, the officer responded, in sum and substance, "That's my call." That officer did not ultimately arrest Ms. Hardeman, but, nonetheless, other officers arrived later in the day to continue harassing and threatening her with arrest. *Id,* ¶¶ 20–28.

On July 24, 2011, Officer Lagoa and Officer Otero approached the indent where Ms. Hardeman was sitting and ordered her to move. Ms. Hardeman tried explaining that she was not breaking any laws, but the officers remarkably told her it was *illegal to panhandle* and further threatened her with arrest. The officers discussed amongst themselves whether they should call defendant Sgt. Burns, the same person who called Ms. Hardeman to intimidate her into leaving the indent just after this lawsuit was filed. The officers then handcuffed her, put her in an NYPD vehicle, and issued her yet another criminal court summons for allegedly violating § 240.20(5). *Id.* ¶¶ 29–39.

## III.  Plaintiff has Standing to Obtain an Injunction

The Article III standing inquiry is whether the party seeking an injunction has pled sufficient facts to show she is "realistically threatened by a repetition of [her] experience..." or whether the claim is "speculative." *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

Although federal court injunctions concerning state police activity raise issues of federalism requiring careful examination (*Rizzo v. Goode*, 423 U.S. 362, 378 (1976)), the Supreme Court has "not hesitated on direct review to strike down applications of constitutional statutes which [it has] found to be unconstitutionally applied." *Cameron v. Johnson*, 390 U.S. 611, 620 (1968).

It is an appropriate exercise of a federal court's equitable powers where the "injunction does no more than require the police to abide by constitutional requirements." *Allee v. Medrano*, 416 U.S. 802, 814 (1974).

In the context of an injunction to restrain police misconduct, the Supreme Court has consistently held that standing is demonstrated by a "persistent pattern" of police misconduct. *Allee*, 416 U.S. at 815–16. In *Allee*, the Supreme Court upheld a permanent injunction against unconstitutional conduct by Texas law enforcement officials. There, the persistent pattern was demonstrated through the defendants' unlawful threatening, detaining, confining, and physically assaulting union leaders engaged in organizing efforts. *Id*. 416 U.S. at 804–05.[1]

Of course, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). In *Lyons*, the Supreme Court found the plaintiff did not have standing to obtain an injunction against an alleged policy of police officers using chokeholds on individuals during traffic stops. The plaintiff had alleged he was subjected to a chokehold during a traffic stop, and was seeking an injunction against the use of chokeholds in all circumstances except in response to specific threats to officers' safety. While plaintiff was able to point to some instances of chokeholds being applied subsequent to his, he had not even been stopped again in the time since the incident, nor was he able to demonstrate that if he were, he would be

---

[1]*Rizzo* reaffirmed the 'persistent pattern' standard from *Allee*, but found it was not met in the context of a *city-wide* injunction against police misconduct, when the misconduct at issue was shown only by statistical evidence rather than the "deliberate plan" shown from the record in *Allee*. As Ms. Hardeman is seeking only an injunction against the defendants' unconstitutional conduct towards her personally, the *overall* evidentiary burden, consistent with *Rizzo*, is much lower. Indeed, Ms. Hardeman has overwhelmingly demonstrated a persistent pattern of unconstitutional conduct *towards herself*.

subjected to a chokehold. The plaintiff therefore did not show he was "realistically threatened by a repetition of his experience." *Id*. 414 U.S. at 109.

None of these concerns apply here. Since July 13, 2011, Ms. Hardeman has twice been issued a criminal court summons (FAC ¶ 76 (July 15, 2011); ¶ 113 (July 25, 2011)), once informally seized (*Id*. ¶ 74 (July 15, 2011)), once formally arrested (*Id*. ¶ 111 (July 25, 2011)), and threatened seven times (*Id*. ¶ 66 (July 13, 2011); ¶ 74 (July 15, 2011); ¶ 76 (July 15, 2011); ¶ 88 (July 19, 2011); ¶ 98 (July 19, 2011); ¶ 104 (July 24, 2011); ¶ 109 (July 24, 2011). She continues to fear that she will be cited, arrested, harassed, and prosecuted. *Id*. ¶ 114. Based on the defendants' repeated and recent conduct, her fear is well founded.

A persistent pattern in the defendants' unconstitutional actions is apparent in these circumstances. The unconstitutional conduct complained of happened as recently as nine days ago, and the defendants have given no indication they will stop.[2] Plaintiff has therefore alleged sufficient facts to demonstrate a live case or controversy for purposes of Article III.

## IV.    A Preliminary Injunction Should Issue

A plaintiff seeking "a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 18 (2008).[3]

Following *Winter*, the Second Circuit has continued to allow a party to obtain a preliminary injunction even in the absence of likelihood of success on the merits when the party seeking the injunction raises

---

[2]Of course, a promise by the defendants to stop engaging in unconstitutional conduct would be of no movement to standing. *See, e.g.,Gray v. Sanders*, 372 U.S. 368, 375–76, (1963).

[3]As the proposed preliminary injunction is prohibitory in nature, and does not command affirmative acts on the part of the defendants, the proper standard is a 'likelihood of success on the merits' rather than the higher 'clear showing' standard applicable to mandatory injunctions. *See Stauber v. City of New York,* No. 03-CV-9162, 2004 WL 1593870 (S.D.N.Y. July 19, 2004) (injunction prohibiting City from enforcing unconstitutional bag search policy at public protests is prohibitory in nature and not subject to higher 'clear showing standard').

"sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 242 (2d Cir. 2009); *see also Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009).[4]

### a.    Plaintiff is Likely to Succeed on the Merits

As a preliminary matter, while it is plaintiff's burden to show she is entitled to a preliminary injunction, defendants bear the burden of establishing the constitutionality of their actions. *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (in a false arrest case, defendants have the burden of demonstrating probable cause for the arrest); *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989) (after plaintiff makes *prima facie* case of a First Amendment violation, the burden of proof shifts to the government).

### 1.    Defendant's Arrest and Charging of Ms. Hardeman Without Probable Cause Violates the Fourth Amendment

The defendants repeatedly seized Ms. Hardeman when she could not possibly have been breaking any law, in violation of her Fourth Amendment rights, and under circumstances demonstrating a likelihood of success on the merits on this claim.

A § 1983 claim for false arrest or false imprisonment "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the

---

[4] Second Circuit precedent also modifies the standard for obtaining a preliminary injunction under Rule 65 by not requiring any consideration of the public interest. *New York City Triathlon v. NYC Triathlon Club*, 704 F.Supp.2d 305 (S.D.N.Y. 2010). Were this Court to consider the public interest, this factor also favors an injunction as "it is always in the public interest to prevent the violation of a party's constitutional rights." *G&V Lounge v. Michigan Liquor Control Commission,* 23 F.3d 1071, 1079 (6th Cir. 1994) (*citing Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 (1979)). "The public has a fundamental interest in the protection of all people's constitutional rights." *Sammartano v. First Judicial District Ct.*, 303 F.3d 959, 973 (9th Cir. 2002); *see also Jolly v. Coughlin*, 76 F. 3d 468, 482 (2d Cir. 1996).

state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, a plaintiff claiming false arrest must show (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003); *Weyant,* 101 F.3d at 852.

Whether the plaintiff was formally arrested, seized, or confined, the inquiry for false arrest purposes is whether "an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action." *People v. Cantor*, 36 N.Y.2d 106, 111 (1975) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Thus, when an officer took a plaintiff's identification and ordered her to "stay put" while writing a summons, she was seized for purposes of a false arrest claim. *Vasquez v. Pampena*, 08-CV-4184, 2009 WL 1373591, *2 (E.D.N.Y. May 18, 2009).[56]

"Probable cause is justification for an arrest and therefore is a complete defense to a false arrest claim." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010). An arrest is supported by probable cause "when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citing *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). Courts look to the "totality of the circumstances" in deciding whether probable cause exists for an arrest. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In so doing, "courts must

---

[5]*See also Griffin-Nolan v. Providence Wash. Ins. Co.*, 04-CV-1453, 2005 WL 1460424, *7 (N.D.N.Y. 2005) ("[c]onduct that accompanies the issuance of an appearance ticket certainly can constitute confinement for purposes of a false arrest or false imprisonment claim"); *Harper v. City of New York*, 09-CV-05571, 2010 WL 4788016, (E.D.N.Y. 2010) *aff'd*, 11-30-CV, 2011 WL 2199973, *4 (2d Cir. June 7, 2011)

[6]Although the issuance of a criminal court summons alone is not a seizure (*Burg v. Gosselin*, 591 F. 3d 95 (2d Cir. 2010)), the issuance of a summons subsequent to a seizure does not cure any underlying unconstitutionality. *Vasquez*. As Judge Gleason put it, "In my view, the issuance of a summons in those circumstances exacerbates, rather than extinguishes, the Fourth Amendment violation." *Id*. at n. 2.

consider those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotations and citations omitted).

Ms. Hardeman has been repeatedly seized for allegedly violating New York's disorderly conduct statute, which states in relevant part:

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
> …
> 5. He obstructs vehicular or pedestrian traffic;

NYPL § 240.20.

The New York Court of Appeals has made clear that to be liable under this section, the accused must have *actually obstructed* pedestrian traffic. *People v. Jones*, 9 N.Y.3d 259, 262 (2007). "Something more than a mere inconvenience of pedestrians is required to support the charge." *Id.* (citing *People v. Carcel*, 3 N.Y.2d 327, 332 (1957)); *see also People v. Reed*, 2008 N.Y. Slip Op 28036 *2 (Crim. Ct., Kings Co. 2008) (dismissing disorderly conduct charge for alleging that defendant stood still and blocked pedestrians on a subway platform, since it was not clear whether defendant "was actively blocking commuters, preventing others from boarding a train").[7]

The first three elements of a the wrongful arrest standard articulated in *Savino* are easily met. Ms. Hardeman has been seized for alleged disorderly conduct on three separate occasions. In the first, she was formally arrested and detained for approximately five (5) hours. FAC ¶ 59. In the second, defendants Castelli and Fabb took her identification while they issued her a criminal court summons, rendering her unable to leave for that period. Hardeman Aff. ¶¶ 17–18. And most recently she was formally arrested with handcuffs and placed in a police vehicle. *Id.* ¶¶ 35–39.

---

[7]While "those congregating on the street display 'atrociously bad manners' by discommode(ing) some other persons, such conduct alone does not necessarily give rise to disorderly conduct."*Jones*, 9 N.Y.3d at 262–63 (citing *People v. Nixon*, 248 N.Y. 182, 185 (1928)).

Each of these seizures was without probable cause. Ms. Hardeman was sitting in an indent and doing nothing more than effectively narrowing the width of the sidewalk by 5.2%. Hardeman Aff. ¶ 5; *see also id*. Ex. A. She did not, and could not, obstruct pedestrian traffic. The totality of the circumstances here is hardly sufficient to warrant a person of reasonable caution to believe she was blocking pedestrian traffic. An officer would have to throw caution to the wind to believe she actually did so.[8]

Ms. Hardeman has therefore been seized without probable cause on three separate occasions, and she is likely to succeed on the merits of her Fourth Amendment claim against the individual officers.

*The City is Liable Under* Monell

In addition to the individual officers, the City is also liable for plaintiff's ongoing Fourth Amendment violations. Under § 1983, a municipality may be held liable "when execution of a government's policy or custom ... inflicts the injury." *Los Angeles Co. v. Humphries*, 131 S.Ct., 447, 452 (2010) (citing *Monell v. Dep't of Soc. Svs.*, 436 U.S. 658, 694 (1978)); *see also, e.g., Fitzgerald v. Barnstable School Comm.*, 555 U.S. 788 (2009) (using the phrase "custom, policy, or practice" to describe municipal liability under § 1983). Here, there are multiple theories of liability against the City.

The first theory is based upon the City's "failure to train its officers about the lawful scope and application of § 240.20 and failing to discipline officers regarding same." FAC ¶¶ 128(a), 129–130. In order to be found liable under this theory, the City's failure to train regarding § 240.20 must amount "deliberate indifference to the rights of persons with whom the police come into contact," including plaintiff and others like her. *City of Canton v. Harris*, 489 U.S. 378, 388–389 (1989);*see also Johnson v. City of New York*, 06-CV-9426, 2011 WL 666161, *3 (S.D.N.Y. Feb. 15, 2011).

---

[8]Although an officer may be immune from a claim of false arrest under the doctrine of qualified immunity if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met" (*Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991)), where plaintiff occupied only 5.2% of the width of the sidewalk and was incapable of blocking pedestrian traffic, there can be no reasonable disagreement on whether there was probable cause.

In the time since the complaint was filed, multiple defendant-officers have harassed, arrested, threatened to arrest, given unlawful orders, and issued criminal court summonses to Ms. Hardeman, apparently under the bizarre impression she could possibly have violated § 240.20. No one familiar with New York law could believe that a person who occupied only ten inches of a sixteen foot wide sidewalk, a mere 5.2% of its total width, had violated § 240.20(5). *See Jones*, 9 N.Y.3d at 262; *Carcel*, 3 N.Y.2d at 332; *People v. Nixon*, 248 N.Y. 182, 187–188 (1928). Only one conclusion can be drawn from the defendant-officers repeated course of conduct towards plaintiff: they simply do not understand the lawful scope and meaning of § 240.20(5), and they are not being disciplined when they misapply it.

The City's failure to train regarding the lawful scope and application of § 240.20(5) can also be inferred from the number of civil rights lawsuits against the City alleging wholly improper use of the disorderly conduct statute. The first amended complaint lists nine (9) civil rights cases, many of them still pending, alleging that NYPD officers falsely arrested civilians under § 240.20(5). FAC ¶ 131. At the very least, those lawsuits should have put the City on notice that its officers are misapplying the disorderly conduct statute. Indeed, the Second Circuit recently recognized that "[d]eliberate indifference to claims of such civil rights violations… may be inferred from a municipality's lack of appropriate response to repeated complaints of such violations." *Jackler v. Byrne*, 10-CV-859, 2011 WL 2937279, *8 (2d Cir. July 22, 2011) (citations omitted). Here, despite the notice provided by those lawsuits, the City has apparently failed to remedially train its officers about the scope of § 240.20(5), as demonstrated by the defendant-officers' course of conduct towards plaintiff since this lawsuit was filed. In this regard, the City's "policy of inaction" in light of notice that its failure to train will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson*, 131 S.Ct. 1350, 1366 (2011) (quoting *Canton*, 489 U.S. at 395 (O'Connor, J., *concurring in part and dissenting in part*)). For those reasons, defendant City's failure to train has caused and will continue to cause this pattern of Fourth Amendment violations against plaintiff.

The second theory of municipal liability is the City's custom or practice of "encouraging or otherwise forcing homeless individuals to seek admission into homeless shelters." FAC ¶¶ 129(b), 132. The existence of this policy should be undisputed. However, this otherwise innocuous-sounding policy becomes dangerous for people such as plaintiff because it "increase[s] the frequency of police interactions with homeless individuals." *Id.*; *see also* ¶ 132(b). It is well-known and fairly intuitive that homeless persons are particularly susceptible to police interaction and the criminalization of behaviors caused by homeless status. *See, e.g., Pottinger v. Miami*, 810 F.Supp. 1551, 1561–1564 (S.D.Fla. 1992) (vagrancy ordinances used to deter homeless people from sleeping, eating, or congregating in public places were overbroad, where homeless people were arrested for harmless, inoffensive conduct they were forced to perform in public places as result of being homeless).[9] Combining the City's policy of trying to push homeless individuals into shelters (and the resulting spike in police contact) with the City's failure to train its officers about the scope of § 240.20(5), it is clear that the City is causing plaintiff's constitutional injuries. *See Monell*, 436 U.S. at 691.

For these reasons, plaintiff is likely to succeed on merits of her Fourth Amendment claims as against all defendants.

### 2. Plaintiff Was Retaliated Against for Engaging in Protected Speech in Violation of the First Amendment

In a First Amendment retaliation claim under § 1983, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

---

[9] *See also* Stacy Lee Burns, *The Future of Problem-Solving Courts: Inside the Courts and Beyond*, 10 U. Md. L.J. Race, Religion, Gender & Class 73, 83–84 (Spring 2010) ("We might, for example, consider training police in alternative policing practices regarding the homeless and the mentally disabled, such as how to divert (not arrest) people with mental health and poverty issues who might otherwise end up arrested and in the criminal courts. Instead of arresting and prosecuting the homeless, police could learn about the range of available community resources to assist vulnerable persons and populations and how to use discretion to provide these resources in ways that minimize stigmatization and social exclusion").

Begging, as a form of solicitation, is unquestionably protected speech. Whether "the person standing on the corner says 'Help me, I'm homeless' or 'Help the homeless,'" "[t]he distinction is not a significant one for First Amendment purposes." *People v. Schrader*, 162 Misc. 2d 789, 795 (Crim. Ct., N.Y. Co. 1994); *Loper v. New York City Police Dept.*, 999 F.2d 699, 704 (2d Cir. 1993).

There is some difference of opinion within the Second Circuit as to whether, in a First Amendment retaliation claim, a plaintiff who has been arrested, issued a criminal court summons, and threatened with arrest, can establish an adverse action through an objective chilling standard or a subjective standard. [10] However, when the retaliation claim concerns *tangible punishment*, separate from the chilling of speech itself, the objective standard is appropriate. *Gill*,389 F.3d at 382–84.[11]

The objective chill test asks "whether the action … would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *N.Y. State Law Officers Union v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006) (quotation omitted).

It is clear that an arrest is an adverse action for purposes of the objective chilling test. *Holley v. County Of Orange, NY*, 625 F.Supp.2d 131, 141 (S.D.N.Y. 2009) ("the absence of probable cause [for plaintiff's arrest] leads to the conclusion that her speech was punished"). Likewise with the issuance of a criminal court summons without probable cause." *Hartman v. Moore*, 547 U.S. 250, 265 (2006).[12]

---

[10]"Second Circuit First Amendment retaliation case law is, to put it mildly, confusing." *Griffin-Nolan v. Providence Washington Ins. Co.*, 04-CV-1453, 2005 WL 1460424, *7 (N.D.N.Y. 2005) (describing three different formulations of a First Amendment retaliation claim from recent Second Circuit case law)

[11]For example, "[t]here is no need, in a retaliatory prosecution action, to meet the chilling prong of this analysis if the plaintiff can establish that the police lacked probable cause to arrest her." *Holley*, 625 F. Supp.2d at 141 (citing *Bradley v. City of New York*, 08-CV-1106, 2007 WL 232945, *7–8 (S.D.N.Y. Jan. 25, 2007); *Genia v. Parker*, 2007 WL 869594, *22–23 (E.D.N.Y. Mar. 20, 2007)).

[12]"But a retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind the charging decision … and enough for a prima facie inference that the unconstitutionally motivated inducement infected the prosecutor's decision to bring the charge." *Id.* (citing *Bordenkircher v. Hayes*,

Furthermore, while the defendant-officers speak with Ms. Hardeman, and issue baseless order to leave and give baseless threats to arrest, she is effectively chilled from presenting her message to the public. The message on her sign is lost amid the spectacle of being interrogated by the police, and she is prevented from engaging in conversation with passers-by. As the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" (*Elrod v. Burns*, 427 U.S. 347, 373 (1976)), this conduct undertaken repeatedly by the defendant officers also constitutes adverse actions for First Amendment purposes.

Finally, the fact that Ms. Hardeman continues to sit on Fifth Avenue does nothing to negate the existence defendants' adverse actions against her. *See Brooklyn Institute of Arts and Sciences v. City of New York*, 64 F.Supp.2d 184, 198 (E.D.N.Y. 1999) ("[t]hat the Museum has so far stood up to these efforts does not deprive it of the right to injunctive relief").

A plaintiff may document a causal nexus between her protected speech and the defendants' adverse actions against her through circumstantial evidence of a retaliatory intent. *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996) (stating that circumstantial evidence is often the only means available to prove retaliation claims). Three distinct types of circumstantial evidence can be used to prove retaliatory intent: "(1) proximity in time between the protected activity and the alleged retaliation, (2) disparate treatment of the plaintiff, and (3) a pattern of antagonism or prior retaliatory conduct." *Rodriguez v. Clinton*, 05-CV-322, 2009 WL 261203,*3 (N.D.N.Y. February 4, 2009) *aff'd*, 357 F.App'x 355 (2d Cir. 2009) (citing *Hous. Works, Inc. v. City of N.Y.*, 72 F.Supp.2d 402, 422–26 (S.D.N.Y. 1999).

The short time period between the protected speech (holding a sign) and the retaliatory activity (arrests, criminal court summons, etc.) evidences the defendants' retaliatory intent.[13] Indeed, Ms. Hardeman's protected speech has been ***concurrent*** with the retaliation.

---

434 U.S. 357, 364 (1978)); *see also Gill*, 389 F.3d at 384 (plaintiff "sufficiently alleged … adverse action on the part of the defendants—the filing of false misbehavior reports against" her).

[13] "If the time that elapses between the protected activity and the adverse action is short enough, nothing more is necessary to satisfy the causation prong." *Holava-Brown v. Gen.*

Likewise, the defendants have singled out Ms. Hardeman for arrest and prosecution while the sidewalks of Fifth Avenue are clogged with employees of local stores wearing sandwich-board advertisements and actively attempting to get in the way of pedestrians so as to pass out flyers. FAC ¶72, n. 2.

Finally, Ms. Hardeman has documented a pattern of harassment, including two arrests, the issuance of two criminal court summons, and repeated threats to arrest her—all without probable cause.

This circumstantial evidence is supported by direct evidence of the defendants' intentions: to get her, and her sign, to leave the indent.[14] All the evidence points to the defendants' animus towards Ms. Hardeman's protected speech as the motivation behind these intentions.

The defendants' actions were in direct response to her exercise of a First Amendment protected activity, and Ms. Hardeman has accordingly shown a likelihood of success on the merits of her First Amendment retaliation claim.

### Plaintiff Was Retaliated Against for Filing this Lawsuit

Two days after the filing of this lawsuit, Ms. Hardeman was contacted by Sgt. Burns, who stated he wished to discuss the complaint with her. Hardeman Aff. ¶7. Two months later, a barrage of retaliatory and discriminatory actions began. This conduct constitutes retaliation in violation of the First Amendment.

---

*Elec. Co.*, 189 F.3d 461, 1999 WL 642966, *4 (2d Cir. 1999) (finding plaintiff met her burden at summary judgment to show a causal connection based on a two-month time period and citing cases where less than two months and twelve days were considered sufficient to create an inference of causation) (citations omitted). *See also Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 555 (2d Cir. 2001) (suggesting the lapse of five months between protected activity and retaliation may show a causal connection).

[14]Hardeman Aff. ¶ 9 ("I was told … that I had to leave"); ¶ 14 (officer stated it was his job to ask her to leave); ¶ 15 (officer "told me I had to leave" and stated "'you can't be here. This is Fifth Avenue'"); ¶ 19 (officer stated "that if I did not leave, the situation would escalate"); ¶ 21 (officer "told me I had to move along"); ¶ 24 ("officer told me I could not be there"); ¶ 27 ("[o]ne of the officers told me I could not be there"); ¶ 31 (officers "told me I couldn't be sitting there"); ¶ 32 (officers said "I had to leave").

It is undisputed that the filing of a lawsuit is protected activity under the First Amendment. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995). Likewise, Ms. Hardeman suffered adverse actions as described above.

The circumstantial evidence points squarely towards a causal connection between the filing of this lawsuit and the adverse actions Ms. Hardeman suffered. The close proximity in time (two months), the targeting of Ms. Hardeman while others nearby are actively trying to block pedestrian traffic without facing charges from the defendants, and the recent pattern of antagonism, all indicate a causal connection.

If the circumstantial evidence points to a causal connection, the direct evidence commands it. Sgt. Burns called Ms. Hardeman two days after this lawsuit was filed to discuss the complaint with her. Ms. Hardeman repeatedly directed him to speak with the undersigned if he actually wished to discuss the matter, and gave him our phone number. He never did. Hardeman Aff. ¶ 7.

This conduct indicates that Sergeant Burns' real motive was to try to intimidate Ms. Hardeman. That the officers antagonizing her appear to be taking their orders from Sergeant Burns (*Id*. ¶ 34) confirms the causal connection and necessitates a finding that the defendants have retaliated against her in violation of the First Amendment.

3.  **Defendants' Repeated Issuances of Summonses In Order to Coerce Plaintiff Into Abandoning the Indent and Cease Panhandling on Fifth Avenue Constitute Abuse of Process in Violation of the Fourteenth Amendment**

The defendant-officers repeatedly issued criminal court summonses to plaintiff in order to coerce her to abandon the indent and stop panhandling on Fifth Avenue. Hardeman Aff. ¶¶13–19, 29–41. In so doing, the defendants have made themselves liable under § 1983 for abuse of criminal process in violation of plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.

In order to establish liability for abuse of process under § 1983, a plaintiff must establish the claim's elements under state law. *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Under New York law, an abuse of

process claim lies "against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act; (2) with the intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook*, 41 F.3d at 80; *Hernandez v. Wells*, 01-CV-4376, 2003 WL 22771982, *8 (S.D.N.Y. November 24, 2003) (Mukasey, D.J.); *Brawer v. Carter*, 937 F.Supp.1071, 1081 (S.D.N.Y. 1996) (Chin, D.J.). In the context of criminal court summonses, abuse of process is "by definition a denial of procedural due process." *Cook*, 41 F.3d at 80 (citation omitted).

The first element of a claim of abuse of process requires that the defendant employ regularly issued legal process to compel performance or forbearance of some act. *Cook*, 41 F.3d at 80. It is axiomatic that a criminal court summons is the precise kind of "regularly issued legal process" which compels the performance of some act, namely requiring plaintiff to appear in court (perhaps repeatedly) under pain of a bench warrant for failure to do so. *Mangino v. Incorporated Village of Patchogue*, 739 F.Supp.2d 205, 231 (E.D.N.Y. 2010); *TADCO Constr. Corp. v. Dormitory Auth. of N.Y.*, 700 F.Supp.2d 253, 272 (E.D.N.Y. 2010). This is especially true where plaintiff was seized while such criminal court summonses were being issued. *Amore v. Novarro*, 624 F.3d 522, 532 (2d Cir. 2010). In sum, plaintiff was issued two criminal court summonses requiring her to appear in criminal court on separate dates and in the hopes it would keep her from panhandling on Fifth Avenue. Accordingly, plaintiff has established the first element of abuse of process.

The second element of abuse of process requires the defendant to have issued the criminal process "with the intent to do harm without excuse or justification." *Cook*, 41 F.3d at 80; *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984).

In this case, the intent to do harm without justification can be inferred from the absence of probable cause to issue plaintiff criminal court summonses. As always, the officers are presumed to know and understand the parameters of the laws they enforce. *Catone v. Spielmann*, 149 F.3d 156, 161 (2d Cir. 1998). When an officer knowingly violates the law or issues criminal process against innocent people, it can be presumed they did

so to do harm without justification. *Phelps v. City of New York,* 04-CV-9570, 2006 WL 1749528, *5 (S.D.N.Y. June 27, 2006) (Cote, D.J.) ("the absence of probable cause is probative of the lack of justification for the officers' actions and the existence of a collateral objective"). As discussed at length in Part IV(a)(1), *supra,* there was simply no "justification," in the form of probable cause, to believe Ms. Hardeman was blocking pedestrian traffic before she was issued criminal court summonses on July 15, 2011 and again on July 24, 2011. In these circumstances, the absence of probable cause is so obvious that it can be inferred that the officers intended to harm plaintiff without justification.

The "intent to harm" element can also be inferred by the officers' repeated attempts at chilling plaintiff's protected activity. *Parkin v. Cornell Univ.,* 28 N.Y.2d 523, 530 (1991) (inferring "intent to do harm" element where process was punishment for engaging in protected activity). It is black letter law that the First Amendment protects panhandling. *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620 (1980); *Loper,* 802 F.Supp. at 1037. Despite that well-known proposition, the defendant-officers have repeatedly issued criminal court summonses to plaintiff, warranting an inference of their intent to harm plaintiff.

Moreover, from the plain reading of the sign plaintiff holds while sitting in the indent, the objective of plaintiff's speech is obvious: to find employment and economic security. *See, e.g.,* Hardeman Aff. ¶ 22. By attempting to stop plaintiff's panhandling, they must also intend any foreseeable economic harm which might result. This threat of economic harm also satisfies the "intent to harm" element. *Board of Ed. of Farmingdale UFSD v. Farmingdale Classroom Teacher Ass'tn Inc., Local 1889,* 38 N.Y.2d 397, 403–404 (1975).

The third and final element of abuse of process requires the defendants issue the criminal process "in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook,* 41 F.3d at 80. In this case, it is clear from the repeated incidences of harassment, arrests, and issuance of criminal process that the defendant-officers had two primary collateral objectives in mind: to coerce plaintiff to move from her spot in the indent and to keep her from panhandling on Fifth Avenue. Such

repugnant objectives are clearly "illegitimate purposes" in the abuse of process analysis. *See, e.g., id*. 41 F.3d at 80 (seeking retribution is a collateral objective); *Hernandez*, 2003 WL 22771982, at *9 (defendant's fear of losing job satisfies collateral objective element); *Brawer*, 937 F. Supp. at 1082 (defendant's goal of currying favor with plaintiff's ex-wife satisfies collateral objective element); *Blake v. Race*, 487 F.Supp.2d 187, 218 n.22 (E.D.N.Y. 2007) (defendant's goal of deterring plaintiff from filing civil rights lawsuit would satisfy collateral objective element); *Van Zandt v. Fish & Wildlife Svce*., 524 F.Supp.2d 239, 246 (W.D.N.Y. 2007) (defendant's goal of stealing valuable property satisfies collateral objective element); *Granito v. Tiska*, 181 F.Supp.2d 106, 118 (N.D.N.Y. 2001) (defendant's goal of intimidating and embarrassing plaintiff satisfies collateral objective element). Accordingly, plaintiff has satisfied the third element of abuse of process.

For these reasons and the reasons set forth above, plaintiff is likely to succeed on the merits of her Fourteenth Amendment claims for abuse of process as against all defendants.

### b.    Plaintiff is Will Suffer Irreparable Harm in the Absence of Preliminary Relief

It is black letter law that "the loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373–74 (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)); *see also Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (deprivation of a constitutional right is *per se* irreparable injury).

Likewise, "irreparable harm may be presumed" from allegations of Fourth Amendment violations. *Stauber v. City of New York*, 03-CV-9162, 2004 WL 1593870 (S.D.N.Y. 2004) (Sweet, D.J.); *see also Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 744 (2d Cir. 2000); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992).

Finally, plaintiff has shown that the irreparable harms are likely given the persistent pattern of conduct engaged in by the defendants, and their threats to continue to engage in this conduct in the future. As

discussed in Part III, *supra*, plaintiff has shown the unconstitutional conduct is likely to reoccur in the future.

### c.    The Balance of Hardships Tips Sharply to Plaintiff

While plaintiff will suffer irreparable harm to her First, Fourth and Fourteenth Amendment rights if an injunction is not granted, the City will not suffer at all if it is ordered to follow the law.

The City has a constitutional duty to refrain from citing or arresting plaintiff in the absence of probable cause. An injunction prohibiting the City from violating plaintiff's constitutional rights would require the City to alter its policing practices only to the extent its practices are currently unconstitutional.[15]

Additionally, under the proposed injunction the City would remain free to arrest, cite or threaten to arrest plaintiff if she were to actually violate § 240.20(5). It is hard to see how this would burden the City in the exercise of any *legitimate* law enforcement activity.

### d.    The 'Serious Questions' Standard has been Met

The "serious questions" standard permits a court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. *Citigroup Global Markets, Inc. v. VCG Special Opport. Master,* 598 F.3d 30, 35 (2d Cir. 2010) (citing *F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.,* 597 F.2d 814, 815–19 (2d Cir. 1979)).

As discussed above, plaintiff has and is likely to continue to suffer irreparable injuries in the absence of an injunction. The City, on the other

---

[15]The City has been repeatedly enjoined from making arrests in violation of the First and Fourth Amendments. *See, e.g., Casale v. Kelly,* 710 F. Supp. 2d 347, 355 (S.D.N.Y. 2010)(City required to "take action to stop future NYPD enforcement of subsections 3 and 7 [of New York Penal Law § 240.35,]" which is unconstitutional);*Stauber*(enjoining police from violating plaintiffs' constitutional rights by searching every protestor's bags before being allowed into public protest 'pens'); *Metropolitan Council, Inc. v. Safir,* 99 F. Supp. 2d 438 (S.D.N.Y. 2000) (granting preliminary injunction and enjoining NYPD from arresting persons sleeping on public sidewalk as part of protest); *Bery v. City of New York,* 97 F. 3d 689 (2d Cir. 1996) (enjoining NYPD from enforcing licensing scheme against street artists when licensing scheme violates plaintiffs' First Amendment rights).

hand, should suffer no hardship if ordered not to violate plaintiff's constitutional rights.

## V.    The Requirement of a Bond Should be Waived

When there is no likelihood of harm to the party enjoined, bond may be dispensed with entirely. *Doctor's Associates, Inc. v. Stuart,* 85 F.3d 975, 985 (2d Cir. 1996). Again, the City will suffer no harm if it is ordered to follow the law, and plaintiff should not be required to post a bond.

## VI.    Conclusion

*"It is simply not a crime to be unemployed, without funds, and in a public place. To punish the unfortunate for this circumstance debases society." Parker v. Municipal Judge, 83 Nev. 214, 427 P.2d 642, 644 (1967).*

The proposed injunction is premised on a clear and persistent pattern of the defendant's unconstitutional conduct, and asks only for the defendants to stop violating Ms. Hardeman's constitutional rights through their patently inappropriate application of New York's disorderly conduct statute.

That Ms. Hardeman has fallen on unfortunate circumstances ***must not*** be cause for officers of the NYPD to engage in a campaign of unconstitutional conduct against her. Plaintiff respectfully requests the Court grant the proposed preliminary injunction, and put an end to the defendants' shameful conduct.


Dated:        New York, New York
              August 2, 2011

Respectfully Submitted,

By: _____
David B. Rankin
Law Office of Rankin & Taylor
*Attorneys for Plaintiff*
350 Broadway, Suite 700
New York, NY 10013
t: 212-226-4507